KNAPP-STILES, INC., v. DEPARTMENT OF REVENUE.

1. TAXATION—SALES—EXEMPTIONS—UNITED STATES.
   Sales to a person, engaged in construction on and improving real estate of the United States, of materials later affixed to and made a part of that real estate or used and consumed in fulfillment of a contract with one in an exempt classification such as the United States or one of its instrumentalities, are specifically exempted from taxation under the general sales tax act (CL 1948, § 205.51, as amended by PA 1960, No 76; CLS 1956, § 205.54).

2. SAME — SALES — EXEMPTIONS — DUMMY CORPORATIONS — UNITED STATES.
   Sales of tangible personal property to a dummy corporation that is wholly owned and controlled by the United States and which constitute sales to the United States for construction of housing facilities on real estate of the United States are exempt under the sales tax act (CL 1948, § 205.51, as amended by PA 1960, No 76; CLS 1956, § 205.54).

3. SAME—USE TAX—EXEMPTIONS—UNITED STATES—ARBITRARY CLASSIFICATION.
   Provision of use tax act exempting property purchased by contractors engaged in improving real estate for others when such property is made a part of real estate or is consumed in fulfillment of a contract for such improving within exempt classifications other than the United States and its instrumentalities or the State of Michigan, its departments or institutions

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  47 Am Jur, Sales and Use Taxes § 20.
   State tax on goods purchased by, or for the benefit of, the Federal Government, or on the privilege of conducting the business in connection with which the sales are made.  140 ALR 621.
   Construction and application of exemption or deduction provision of general sales tax act.  157 ALR 804.
[3]  47 Am Jur, Sales and Use Taxes § 42 et seq.

constituted an unreasonable, arbitrary, and discriminatory classification, hence use tax may not be levied on property purchased by dummy corporation, a wholly owned and controlled instrumentality of the United States and used in construction of housing project on real estate of the United States (CL 1948, § 205.94, subd [m], as last amended by PA 1959, No 272).

Appeal from Kent; Searl (Fred N.), J. Submitted April 4, 1963. (Calendar No. 32, Docket No. 50,041.) Decided July 17, 1963. Rehearing denied November 7, 1963.

Bill by Knapp-Stiles, Inc., a Michigan corporation, against the Michigan Department of Revenue for declaratory decree exempting levy of sales and use taxes on materials to be used in United States air force housing project. Decree for plaintiff. Defendant appeals. Affirmed.

*Warner, Norcross & Judd* (*Harold S. Sawyer* and *Paul K. Gaston,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *T. Carl Holbrook, Maurice Barbour,* and *William D. Dexter,* Assistant Attorneys General, for defendant.

DETHMERS, J. Plaintiff corporation, a building contractor, sought a decree[1] declaring that it and its suppliers are not required to pay the Michigan sales tax or use tax upon the purchases, sales or use by it of materials for construction, on United States property in Michigan, of housing for the United States air force, under the contracts between the latter and plaintiff hereinafter discussed, which materials are either attached to or made a part of the real estate or consumed in the course of the perform-

---

[1] See CL 1948, § 691.501 *et seq.* (Stat Ann § 27.501 *et seq.*).—RE-PORTER.

ance of such contracts. Defendant appeals from decree granting plaintiff the relief sought.

The United States government, acting through its department of the air force, hereinafter called the department, determined to construct housing on certain of its bases in Michigan. It issued invitations to bid, setting forth full conditions and particulars for bidding, contracting to construct and performance. All procedures and actions in relation to the bidding, contracting, performing and constructing were conducted pursuant to the Capehart act, title 8, as amended by the housing amendment of 1955, title 4, Public Law 345, 84th Congress,[2] and regulations and requirements of the department of defense and the Federal housing administration. Everything with respect thereto was also done in conformity with the requirements of the department, which furnished all the forms used for creation of the contractual relationships here involved.

For each of the several housing projects, respectively, undertaken by plaintiff, the following was required by the department and done: after plaintiff had submitted its bid to the department, which accepted it, plaintiff, as obligated by the acceptance, organized a Delaware corporation having as officers plaintiff's officers, with $1,000 capitalization, which was authorized by its charter to negotiate with the Federal housing administration to secure insurance upon mortgages to finance the housing project, but forbidden to issue additional stock, declare dividends or engage in any other business; its stock with stock powers and the resignation of all of its officers were required to be deposited in escrow, for delivery to the department upon completion of construction of the housing; the department and the Federal housing administration were to be sole judges of when there

---

[2] See 12 USCA, § 1748 *et seq.*—REPORTER.

has been such completion; land upon which the construction was to occur, already owned by the United States government, was leased by the latter to the corporation for which it paid the $1,000 constituting its total capital; under the lease the right to use and possession of the land was reserved to the department; the corporation obtained loans from private sources to cover construction costs and executed therefor mortgages insured by the Federal housing administration, payment of which was also guaranteed by the department; funds obtained on such mortgages were paid in monthly instalments by the mortgagees to the corporation, upon certification of the department that certain stages of the work had been completed, and then turned over to plaintiff; when construction is completed and the escrow ends with the department owning the corporation, all further maintenance and supervision of the project will be carried on by the department, which may terminate the lease to the corporation whenever it chooses to do so; in the meanwhile, the agreements have consisted of a building contract between the department, plaintiff and the corporation, a lease from the United States government to the corporation, and mortgages from the corporation to mortgagees insured by the Federal housing administration and guaranteed by the department. The purpose of the corporation arrangement is to allow the United States government to carry on an extensive program of such housing without including its cost in the Federal fiscal budget, thus avoiding violation of its direct debt limit. Under the contract all of the machines, equipment, supplies, and materials which remain personal property under the laws of the State and are purchased or manufactured by either plaintiff or the corporation for use in constructing the project shall be so acquired or manufactured for sale to the department. Title to

all material and work covered by progress payments made by the corporation vests in the department. Plaintiff's actions and performance were in conformity with the above.

The Michigan sales tax act, section 1, subd (c) (CL 1948, § 205.51, as amended by PA 1960, No 76 [Stat Ann 1961 Cum Supp § 7.521]), provides:

"The term 'sale at retail' shall also include the sale of tangible personal property to persons engaged in the business of constructing, altering, repairing or improving real estate for others except property purchased by such persons which becomes affixed and made a structural part of real estate or is used and completely consumed in the fulfillment of a single contract with any of the exempt classifications hereinafter set forth in section 4 and subsections (a) and (b) of section 4a of this act."

Section 4 of that statute, CLS 1956, § 205.54 (Stat Ann 1960 Rev § 7.524), reads in part:

"No person subject to a tax under this act need include in the amount of his gross proceeds used for the computation of the tax any proceeds of his business derived from sales to the United States, its unincorporated agencies and instrumentalities, any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States, the American Red Cross and its chapters and branches, and the State of Michigan or its departments and institutions or any of its political subdivisions."

The Michigan use tax act, section 4, subd (m) (CL 1948, § 205.94, as last amended by PA 1959, No 272 [Stat Ann 1960 Rev § 7.555(4)]), provides that the tax levied by that act shall not apply to:

"(m) Property purchased by persons engaged in the business of constructing, altering, repairing or improving real estate for others when property so

purchased by such persons shall be affixed and made a structural part of real estate or used and completely consumed in the fufillment of a single contract within the exempt classifications set forth in subsections (b), (i), (j) and (k) of this section other than the United States, its unincorporated agencies and instrumentalities, or any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States or the State of Michigan, its departments or institutions; or which shall not be affixed and made a structural part of real estate but shall be transferred to a person in fulfillment of a contract with such person for his use for an exempt purpose as set forth in subsection (f) or (g) of this section."

The power of the State to impose the mentioned taxes on plaintiff in connection with the performance of a building contract with the United States is not in issue. It is conceded. The supreme court of the United States has upheld it. *Alabama* v. *King & Boozer,* 314 US 1 (62 S Ct 43, 86 L ed 3, 140 ALR 615); *United States* v. *City of Detroit,* 355 US 466 (78 S Ct 474, 2 L ed 2d 424); *United States* v. *Township of Muskegon,* 355 US 484 (78 S Ct 483, 2 L ed 2d 436); *City of Detroit* v. *Murray Corporation,* 355 US 489 (78 S Ct 458, 78 S Ct 486, 2 L ed 2d 441, 2 L ed 2d 460). The twofold question, rather, is whether Michigan has imposed the sales tax thereon or exempted the same therefrom, and, second, whether imposition of the use tax thereon by the use tax act works an unconstitutional discrimination rendering the act in that respect invalid and the use tax thereon unenforceable.

Plaintiff contends and the trial court held that the sales of materials in question are expressly exempted from the Michigan sales tax by the above quoted language of section 1 subd (c) and section 4 of the

sales tax act and also that their use is exempt from the use tax because the use tax act and particularly the quoted language of section 4, subd (m) thereof is unconstitutional in the respect that it discriminates against the United States and those who deal with it as distinguished from the State's political subdivisions and those who deal with them, inasmuch as the act undertakes to exempt from the tax such use of materials by the latter but excludes the former from that exemption.

Defendant, on the contrary, says that plaintiff's contractual relationship and building operations are with and for a private corporation and not at all with or for one in the exempt classifications, such as the government of the United States or any of its agencies, instrumentalities or owned corporations, and that, hence, the noted exemption provided in the sales tax act is without application in this case and the possibility of unconstitutional discrimination by exclusion of the United States government from the exemptions in the use tax act is not here involved.

Accordingly, each party presents a line of authorities in support of its arguments which lead to its conclusion, provided its major premise respecting the above issue is accepted at the outset.

We agree with the holding of the trial court that plaintiff's housing construction contract is with the United States acting through its instrumentality, the department. From this, it follows that here involved were sales, to a person (plaintiff) engaged in construction on and improving real estate of the United States, of materials later affixed to and made a part of that real estate or used and consumed in fulfillment of a contract with one in an exempt classification, namely the United States or one of its instrumentalities or sales by plaintiff or its suppliers to the latter. These are specifically exempted by the quoted language of the sales tax act.

Persuasive to us are the reasons advanced by the trial court for so holding. They are, in substance, as follows: (1) the construction contract names the United States as one of the contracting parties; (2) it is signed by the United States; (3) the governing Federal statute authorizes the department to enter such contract; (4) the department prepares the plans and specifications, invites bids, accepts a bid, issues a letter of acceptability to the successful bidder, and a meeting of the minds between the department and plaintiff bidder occurs before the corporation comes into existence; (5) the contract makes the United States not only a formal but the dominant party; (6) the contract gives the United States all the powers and gives the corporation none; (7) work must be done to the satisfaction of the department and payment to plaintiff for construction may be made only on its authorization; (8) the housing is built on and will become a part of United States real estate; title to all material and work, when paid for as the work progresses, vests in the department; (9) all equipment, machines, supplies and materials acquired by plaintiff for the job shall be acquired for sale to the department; (10) the only purpose served by the corporation is to enable the government of the United States to bypass its debt limit; (11) as stated in the department's invitation to bid, the corporation is intended by the governing statute to be a "channel" for the flow of loan proceeds to the contractor; (12) the corporation has no other function or authority; (13) the corporation had nothing to say about the terms of the contract which were agreed upon before it came into being; (14) the United States was not merely a nominal but the real party to the contract. To these reasons plaintiff adds that the corporation is of itself in an exempt classification in that it is wholly and beneficially owned by the United States. We further note that

not only does the department become owner of the corporate stock at completion of the construction but it takes over use and control of the property, and the mortgage loans, insured by the Federal housing administration, are guaranteed by the department. The net total result is that after the dummy corporation has served its purpose as a "channel" during the construction period, the department owns, operates and pays for the housing facilities from such receipts, rentals or otherwise, as it may determine. Under such combination of facts the corporate veil may and should be pierced to permit judicial discernment of the true situation. Plaintiff built housing for the department, an instrumentality of the United States, under a contract between them. By the wording of the sales tax act, the exemption applies. Such was the holding of a district court of appeal of Florida in *Green* v. *Eglin AFB Housing, Inc.*, 104 So 2d 463, in which the factual circumstances and the language of that State's sales tax act, in the respects here material, are very similar to those at bar.

Defendant states in its brief:

"The relationship between the contractor, the United States government proper and the Delaware corporations in question, as a factual matter, is no different in substance from that involved in *Application of S. S. Silberblatt, Inc.*, 6 App Div 2d 603 (180 NYS2d 210), affirmed April 17, 1959, by *Matter of Silberblatt, Inc.*, v. *Tax Comm., Court of Appeals*, 5 NY2d 635 (186 NYS2d 646, 159 NE2d 195); *Green* v. *Eglin AFB Housing, Inc.* (Fla App), 140 So 2d 463; and *Offutt Housing Co.* v. *Sarpy County*, 351 US 253 (76 S Ct 814, 100 L ed 1151)."

In discussing these 3 cases, defendant also treats with *Dayton Development Fort Hamilton Corp.* v. *Boyland*, 133 NYS2d 831. As already indicated, *Green* holds contrary to defendant's position, the

court saying that the interest of the corporation was so negligible that it could not destroy the exemption made applicable by the Florida statute to sales of personal property to contractors employed by the United States when such property goes into public works owned by the United States. In *Offutt* the United States government lease of its property to the petitioner was for 75 years, the housing the latter built thereon had an estimated life expectancy of 35 years, petitioner was entitled to the rents therefrom, and the court held, accordingly, that the full interest in the housing belonged to petitioner and that congress had consented to imposition of local tax thereon. In *Dayton* the lease from the United States was for 75 years, title to all improvements to be made thereon was reserved to the lessee, and the court held that congress had consented to local tax on such property when not required for public use. In the instant case, as distinguished from *Offutt* and *Dayton,* the lessee corporation got nothing, its leasehold interest was worth nothing to it or its stockholders, and the only ones receiving any benefits from the contractual arrangements were the department for whom the housing was built, plaintiff who presumably made some profit from building the same, and the mortgagees who apparently received interest on their loans. Nothing in that entire situation relieves the stark fact that the corporation was but a sham. In *Silberblatt* the court upheld the validity of imposition of a State mortgage tax on the mortgages given by the corporation to mortgagees who had financed the building project. To the extent that language therein indicates that the corporation was an independent entity apart from the United States government, we reject it as not applicable here inasmuch as the department held its stock and the resignation of its officers, could cancel the lease to it at will after completion of construction, and at all

times had use and control of the premises. At all events, the holdings in these cases are not authority for defendant's contention that plaintiff's contract was not with an instrumentality of the United States and that the exempting provisions of the Michigan sales tax act do not apply here.

We come now to consideration of the validity of imposition of the use tax under the facts in this case. As already noted, section 4, subd (m) of the use tax act exempts property purchased by contractors engaged in improving real estate for others when such property is made a part of the real estate or is consumed in fulfillment of a contract for such improving within exempt classifications other than the United States and its instrumentalities or the State of Michigan, its departments or institutions. Thus, the exemption applies to contractors' purchases of materials which are made a part of or are consumed in improving real estate for cities, villages, townships, counties, school districts, or other political subdivisions of this State but is not extended to materials purchased by contractors for like use under contract with the United States or its instrumentalities.

Plaintiff urges that the trial court was correct in holding that such discrimination is unconstitutional. Defendant's answer thereto is akin to its position with respect to the sales tax angle of this case, namely, that the problem of such discrimination is not presented in this case because plaintiff's contract and relationship is with a private corporation, not with the United States. In view of our contrary holding in that regard, as above stated, the constitutional question must be determined.

No reasonable basis appears to support a classification for use tax exemption purposes which distinguishes between the United States or its instrumentalities, agencies, or corporations and those

dealing or contracting therewith, on the one hand, and, on the other, the State's political subdivisions and those dealing or contracting with them. .That such distinction is arbitrary, unreasonable, and discriminatory is evident.

Defendant cites *United States* v. *Department of Revenue of Illinois,* 202 F Supp 757, as holding that such distinctions made by statute for taxing purposes are not necessarily invalid. It happens, however, that the distinction for sales tax exemption purposes ultimately upheld in that case was that between retailers doing business with the United States and retailers doing business with charitable organizations, on the ground that a reasonable basis existed for such classification. At the same time, it was held that a classification distinguishing between retailers dealing with the United States and those dealing with the State, its agencies or political subdivisions, was not reasonable and hence invalid. There is no comfort in the holding in that case for defendant here.

In *Phillips Chemical Co.* v. *Dumas Independent School District,* 361 US 376 (80 S Ct 474, 4 L ed 2d 384), the court held invalid a Texas statute imposing a tax on private users or lessees of United States property when another Texas statute exempted from the tax lessees of property owned by the State of Texas or its political subdivisions. It was held that this was discrimination against the United States and its lessees and that the discrimination was not justified by any significant difference between them. The court said (pp 385, 387):

"But where taxation of the private use of the government's property is concerned, the government's interests must be weighed in the balance. Accordingly, it does not seem too much to require that the State treat those who deal with the government as

well as it treats those with whom it deals itself. Compare *Esso Standard Oil Co.* v. *Evans,* 345 US 495, 500 (73 S Ct 800, 97 L ed 1174).  \*  \*  \*

"It follows that article 5248, as applied in this case, discriminates unconstitutionally against the United States and its lessee. As we had occasion to state, quite recently, it still remains true, as it has from the time of *M'Culloch* v. *Maryland,* 4 Wheat (17 US) 316 (4 L ed 579), that a State tax may not discriminate against the government or those with whom it deals. See *United States* v. *City of Detroit,* 355 US 466, 473 (78 S Ct 474, 2 L ed 2d 424). Therefore, this tax may not be exacted."

We are in accord with the concluding sentence in the trial court's decision, reading as follows:

"Distasteful though it may be, this court must hold that section 4, subd (m) of the use tax act is invalid with respect to property purchased by plaintiff for fulfilling its contract with the United States for construction of housing at the air force bases."

Affirmed.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred.